**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DONNELL FLORA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15 C 1127** |
| | ) | |
| **THOMAS DART, Sheriff of Cook** | ) | |
| **County, and COOK COUNTY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Donnell Flora filed this lawsuit against Sheriff Thomas Dart, in his official capacity, and Cook County (collectively, the Sheriff), alleging that the Sheriff violated his rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and the Rehabilitation Act (RA), 29 U.S.C. § 794(a), while Flora was housed in the Cook County Jail as a pretrial detainee. Flora has now moved for summary judgment on the issue of liability on certain of his claims.

### Background

Unless stated otherwise, the following facts are undisputed. Flora is a paraplegic who is confined to a wheelchair. Due to his condition, he is unable to care for himself without some sort of assistance. For example, Flora must use a catheter to urinate. Flora is able to use a toilet independently only if he is provided with a raised toilet with grab bars.

Flora was detained at the Cook County Jail from April 30, 2014 to March 22,

2016.  From May 2014 to September 2014, Flora was assigned to rooms in three separate areas of the Cook County Jail:  Cermak North, Cermak South, and the Residential Treatment Unit (RTU).  From May 1, 2014 to August 5, 2014, Flora was housed in Cermak 3 North.  During this period of time, Cermak 3 North had only one room—room 3243—that had at least one grab bar near the toilet.  From May 1, 2014 to June 4, 2014 and August 1, 2014 to August 4, 2014, Flora was assigned to a room with a standard toilet and sink combination that lacked a grab bar.  Flora testified that while he was housed in Cermak 3 North, he was dependent on other inmates to place him on the toilet because he was unable to do so on his own.

From May 1, 2014 to August 5, 2014, Flora used the group shower in Cermak 3 North.  Cermak 3 North lacked a mounted shower seat in its group shower.  A wheelchair-using detainee housed in Cermak had the option of using a portable shower chair.  *Id*.  Flora requested and was provided with a portable shower chair.  He contends that he was unable to propel himself onto the portable shower chair due to the size of its wheels.  On at least one occasion, however, Flora was able to effectively use the portable shower chair with the assistance of a nurse.  But on at least one other occasion, Flora says, he fell in the shower and injured himself.  Defs.' Stat. of Material Facts (SOMF), Ex. H (Grievances) at 000086.  In a grievance that he submitted to the Sheriff, Flora wrote that he fell in the shower as he attempted to transfer himself from his wheelchair to the portable shower chair.  He also requested medical attention and a "proper shower chair."  *Id*.

From August 6, 2014 to August 21, 2014, Flora was housed in Cermak 3 South. From August 6, 2014 to August 10, 2014, he was assigned to room 3123, which had a

standard toilet without a grab bar. From August 10, 2014 to August 21, 2014, Flora was assigned to room 3125, which likewise had a standard toilet without a grab bar. Flora testified that during his time in Cermak 3 South, he was required to defecate on his bed and store his feces in a red hazard bag until he was able to dispose the waste the next day. Flora explained in a grievance that "[o]n August 7, 2014 . . . . I was moved [to] a room that [is not] accessible. I asked to be moved to a room that is accessible. I was told that there wasn't any room like that and that wasn't the first time [that] I [have] heard that." Grievances at 000086. He asked to be moved to a "handicap accessible room to prevent further injury." *Id.*

On August 24, 2014, Flora was transferred to the RTU. Prior to Flora's transfer, Dr. Connie Mennella, the Chair of Medicine for Cermak Health Services, sent an e-mail to the Sheriff's office and Cermak that included a list of eighty prisoner-patients who were to be moved to the RTU. In the body of the e-mail, Dr. Mennella used a (P) designation to highlight eight patients whom she believed should be given "priority for beds accommodating wheelchairs at the bedside." Pl.'s Statement of Material Facts (SOMF), Ex. 23 (Mennella E-mail). Flora received a (P) designation. *Id.*

From September 4, 2014 to September 23, 2014, Flora was assigned to the RTU in cell 7 in Tier 3A. Cell 7 did not have grab bars near the toilet. The RTU had a policy that a wheelchair-using detainee was permitted to leave his cell to use the ADA-compliant bathroom in the dayroom. Flora says that "[in order] to use the washroom, I have to beat on the door for me to get out of the cell to go to a[n] [] accessible toilet." Pl.'s SOMF, Ex. 17 (Flora Dep.) at 128:20-23. Flora testified that he had difficulty getting the attention of an officer when he wanted to use the bathroom. He explained,

"[h]alf of the time there was not any officers in there, due to us being in our cells, so they don't have to stay on the deck. And it was hard to get in contact with an officer to come out of the cell to use the washroom." *Id.* at 128:23-129:4.

From April 30, 2014 to March 2016, Flora was required to attend court approximately once a month. He testified that he was unable to use the bathroom when he was transported between the Cook County Jail and the Leighton Courthouse. In two separate grievances, Flora explained that because the holding area lacked grab bars near the toilet, he soiled himself. He also had trouble accessing the courthouse due to a steep ramp. He testified that he was required to navigate his wheelchair up and down the ramp without assistance and that, on one occasion, he hit the courthouse wall.

Flora filed this lawsuit on February 3, 2015, alleging that the Sheriff violated his rights under Title II of the ADA and the RA.

### Discussion

To prevail on a summary judgment motion, the movant must demonstrate that there is no genuine dispute as to any material fact and that he is entitled to a judgment in his favor as a matter of law. Fed. R. Civ. P. 56(a). In making this determination, the Court must "construe all facts and inferences in favor of the nonmoving party." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). Summary judgment is appropriate "when no genuine issue of material fact exists such that no reasonable jury could find for the nonmovant." *Id.*

Flora's motion for partial summary judgment concerns two of his claims under the ADA and RA. First, he claims that he was denied access to the Cook County Jail's toilets and showers on account of his disability. Flora contends that the Sheriff had

knowledge of these violations but failed to correct them.  Second, Flora claims that he was denied access to the Leighton Courthouse because of his disability.  He seeks summary judgment as to liability on both of these claims.

## A.    Claims under Title II of the ADA and the RA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Likewise, the RA prohibits a "qualified individual with a disability" from being "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" as a result of his disability.  29 U.S.C. § 794(a).

The analysis under each statute is the same, except that the RA requires receipt of federal funding, which is not disputed here.  *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).  To establish a violation of Title II of the ADA and the RA, Flora "must prove that he is a qualified individual with a disability, that he was denied the benefits of the services, programs, or activities of a public entity[,] . . . and that the denial or discrimination was by reason of his disability."  *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir.) (internal quotation marks omitted), *cert. denied*, 136 S. Ct. 321 (2015).  A correctional facility may violate the ADA and the RA if it denies an inmate with a disability access to the facility's toilets and showers.  *Jaros*, 684 F.3d at 672 ("[I]ncarceration is not a program or activity, the meals and showers made available to inmates are.").  Indeed, access to "[a]dequate food and facilities to wash and use the toilet are among the minimal civilized measure of life's necessities that must be afforded

prisoners." *Id.* (internal quotation marks omitted).

The ADA and RA also "provide[] for damages if a public official intentionally discriminates because of disability." *Morris v. Kingston*, 368 F. App'x 686, 689 (7th Cir. 2010). Though the Seventh Circuit has not yet decided whether discriminatory animus or deliberate indifference is required to show intentional discrimination, the parties are in agreement that deliberate indifference is the appropriate standard here. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 n.4 (7th Cir. 2014). A prisoner's request for relief that falls on "'deaf ears' may evidence deliberate indifference." *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015).

In sum, in order for Flora to show that he is entitled to damages under the ADA and RA, he must show that 1) he is a qualified individual with a disability; 2) he was denied access to Cook County Jail services and programs on account of his disability; and 3) the Sheriff was deliberately indifferent to the denial of access.

**B.    Claim concerning access to toilets and showers**

**1.    Qualified individual with a disability**

A "disability includes the limitation of one or more major life activities, which include walking, standing, bending, and caring for oneself." *Jaros*, 684 F.3d at 672; 42 U.S.C. § 12102(2)(A). It is undisputed that Flora is a qualified individual with a disability as defined by the ADA and RA. As a paraplegic, Flora is unable to perform any of the listed activities without assistance.

**2.    Denial of access**

The ADA and RA prohibit denying individuals with disabilities access to a public entity's programs and services due to structural barriers. Title II requires a public entity,

including a correctional facility, to "take reasonable measures to remove architectural and other barriers to accessibility." *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (citing 42 U.S.C. § 12131(2)). A reasonable measure includes designing a building in "such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.151(a)(1). A building is "readily accessible" if it complies with ADA and RA accessibility guidelines, compliance with which is required by applicable regulations. *Lane*, 541 U.S. at 532. The appropriate guideline for a particular building are determined by the building's age. For example, when physical construction or alterations begin "after July 26, 1992, but prior to September 15, 2010, then new construction and alterations [] must comply with either [the Uniform Federal Accessibility Standards (UFAS)] or the 1991 Standards." 28 C.F.R. § 35.151(c)(1). Likewise, when physical construction or alterations begin "on or after March 15, 2012, then new construction and alterations [] shall comply with the 2010 Standards." *Id.* § 35.151(c)(2).

Flora contends that he was denied access to the Cook County Jail's toilets and showers. He asserts that, while he was detained, he was assigned to rooms that lacked grab bars near the toilet and mounted seats in the shower. As a result, Flora contends, he was unable to use the Jail's toilets and showers on his own without the risk of injuring himself.

Even viewing the record in the light most favorable to the Sheriff, Flora has established that he was denied access to the Cook County Jail's services on account of his disability. No reasonable fact finder could find otherwise.

The buildings in which Flora was housed are subject to ADA and RA accessibility

standards that require accessible toilets and showers. Flora was housed in Cermak from May to August 2014. Cermak Hospital was built in 1998, so the construction of the building was required to comply with either the UFAS or the 1991 ADA Standards for Accessible Design. Both sets of standards require an accessible toilet to have grab bars mounted near the toilet. The 1991 Standards state that "[a]ccessible toilet stalls . . . shall meet the requirements of 4.17," which include the requirement that "[g]rab bars . . . shall be provided." 1991 Standards § 4.17.6; *see, e.g.*, UFAS § 4.17.6. Moreover, both sets of standards require an accessible shower to have a mounted shower seat. *See, e.g.*, 1991 Standards § 4.21.3 ("A seat shall be provided in shower stalls . . . . [and] [t]he seat shall be mounted . . . from the bathroom floor and shall extend the full depth of the stall."); UFAS § 4.21.

Flora was also housed in the RTU from September 6, 2014 to September 24, 2014. The RTU was opened to wheelchair users in August 2014. Thus it was required to comply with 2010 ADA Standards for Accessible Design. The 2010 Standards similarly require that "[g]rab bars shall be provided on the side wall closest to the water closet and on the rear wall" of an accessible toilet. 2010 Standards, § 604.5. The exception to this rule is "cells that are specially designed without protrusions for purposes of suicide prevention." *Id.*

While detained, Flora was assigned to rooms that did not comply with accessibility standards. It is undisputed that he did not have access to a toilet with a grab bar in the following locations on the following dates: room 3239, Cermak 3 North from May 2, 2014 to August 5, 2014; rooms 3123 and 3125, Cermak 3 South from August 6, 2014 to August 21, 2014; and cell 7, RTU Tier 3A from September 4, 2014 to

September 23, 2014.  Likewise, it is undisputed that Flora did not have access to a shower with a mounted seat from May 2, 2014 to August 5, 2014.

Based on these undisputed facts, no reasonable jury could conclude that Flora was not denied access to services at the Cook County Jail because of his disability.  Flora, a wheelchair-bound detainee, required an ADA-compliant room in order to access the Cook County Jail's toilets and showers.  But notwithstanding his need for an accommodation, he was housed in non-ADA-compliant rooms during the listed periods from May through September 2014.  Flora could not properly access the toilets and showers during those periods.

The Sheriff contends that it could not have anticipated the appropriate accommodation for Flora because his "disability is not limited to the fact he uses a wheelchair; [it] also impacts the major bodily functions of bowel and bladder control." Defs.' Resp. at 11.  The Sheriff contends that the onus was on Flora to propose a reasonable accommodation and to establish that it was necessary.  The Sheriff argues that a reasonable jury could find that it did not fail to provide Flora with a reasonable accommodation because it lacked notice that such an accommodation was necessary.

A request for an accommodation is unnecessary where the "entity will know of the individual's need for an accommodation because it is 'obvious.'"  *Robertson v. Las Animas Cty. Sheriff's Dep't,* 500 F.3d 1185, 1197 (10th Cir. 2007); *see also, e.g.*, *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001) ("When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required."); *Phipps v. Sheriff of Cook Cty.*, 681 F. Supp. 2d 899, 926

(N.D. Ill. 2009) ("[W]here a disabled individual's need for an accommodation is obvious, the individual's failure to expressly request one is not fatal to the ADA claim.") (internal quotation marks omitted).  Flora was not required to request an accommodation from the Sheriff because his disability and need for an accommodation were obvious; no reasonable fact finder could find otherwise.  But even if this were not the case, the record reflects that Flora *did* request an accommodation.  He submitted several grievances asking for a "proper shower chair" and a "handicap accessible room," as well as a request that the jail's "showers and other toilets be made wheelchair and handicap accessible."  Grievances at 000086-000087.  Accordingly, the Sheriff cannot avoid liability by asserting that it could not have anticipated Flora's need for an accommodation.

The Sheriff also argues that, even if Flora was denied access to an ADA-compliant room, his statutory rights were not violated because he had equivalent access to the Jail's toilets and showers.  The Sheriff contends that Flora was given equivalent access to the Jail's toilets and showers by:  1) providing him with a portable shower chair (the shower chair policy); 2) providing him with 24-hour access to nurses (the 24/7 access policy); and 3) permitting him to leave his cell to use the RTU dayroom's ADA-compliant toilet (the dayroom policy).  Yet these policies, alone or in combination, did not give Flora equal or greater access to the Jail's programs and services as compared with an ADA-compliant room.  No reasonable fact finder could find otherwise.

For a building covered by the 1991 ADA Standards, such as Cermak, the ADA permits "[d]epartures from particular requirements . . . by the use of other methods . . . when it is clearly evident that equivalent access to the facility or part of the facility is

thereby provided." 28 C.F.R. § 35.151(c)(1). Likewise, for a building that is subject to the 2010 ADA Standards, such as the RTU, the ADA does not prevent the "use of designs, products, or technologies as alternatives to those prescribed, provided that the alternatives result in substantially equivalent or greater accessibility and usability." 28 C.F.R. § Pt. 36, App. B § 103. "The purpose of allowing for equivalent facilitation is to encourage flexibility and innovation while still ensuring access." *Id.*

The structural modifications required by ADA accessibility standards enable a person with a disability to have the same degree of access to a facility as an individual without a disability. Indeed, as just noted, that is the standard for determining whether an accommodation is ADA-compliant. The ADA accessibility guidelines describe structural modifications that the U.S. Department of Justice has determined will provide an individual with a disability with equal access. To constitute equivalent access, a policy must provide an individual with a disability like or greater access as compared with the prescribed structural modification. *See Caruso v. Blockbuster-Sony Music Entm't Ctr. at Waterfront*, 193 F.3d 730, 739 (3d Cir. 1999) ("[T]he 'Equivalent Facilitation' provision does not allow facilities to deny access under certain circumstances, but instead allows facilities to bypass the technical requirements laid out in the Standards when alternative designs will provide 'equivalent or greater access to and usability of the facility.'").

A structural modification that complies with the ADA accessibility guidelines enables an individual with a disability to have the same level of access to a facility's programs and services as an individual without a disability. Thus it stands to reason that a policy that provides equivalent access must do the same and must take into

account that equal access may, depending on the circumstances, entail more than simple physical access. *See generally* 42 U.S.C. § 12101 (purpose of ADA is to "assure equality of opportunity, full participation, independent living, and economic self-sufficiency" for individuals with a disability). With no binding ADA Title II authority directly on point, the Court looks to ADA Title III cases on this subject. Under Title III, a policy is said to provide equivalent access if it enables an individual with a disability to have the same experience, level of integration, and independence as an individual without a disability. By way of example, the Ninth Circuit concluded in *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1173 (9th Cir. 2010), that Chipotle, a restaurant chain, did not provide wheelchair users with equal or greater access to its services. Chipotle had not complied with the ADA standard setting the maximum height for food preparation counters at 36 inches. *Id.* at 1171-72. As a result, customers in wheelchairs, unlike non-wheelchair-bound customers, could not observe the selection and preparation of their food orders. *Id.* at 1173. Chipotle argued that it provided wheelchair users equivalent access by "showing [them] samples of the individual foods in serving spoons, held in tongs or in plastic cups, or assembling the food at the 'transaction station' or at a table in the seating area." *Id.* at 1174. The court held that this did not "provide [the wheelchair user] substantially equivalent or greater access to and usability of the facility" because it "merely provide[s] a substitute experience that lacks the customer's personal participation in the selection and preparation of the food that the full 'Chipotle experience' furnishes." *Id. See also, e.g., Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 866, 867 (N.D. Cal. 2011) (restaurant chain did not meet ADA guidelines requiring queue lanes to be at least 36 inches wide as needed to

accommodate wheelchair users but had wheelchair users form their own line next to the customer line; this was not equivalent access because it was "inconvenient, cumbersome, and embarrassing," as it required them to rely on others to place their orders); *Caruso*, 193 F.3d at 739 (rejecting concert venue's contention that it provided wheelchair-bound patrons equivalent access to lawn seating area by providing purportedly higher-quality seats inside venue's pavilion in lieu of access to lawn seating; equivalent facilities provision of ADA does not permit interpretation of that would allow restriction of access "based on a belief that wheelchair users will be better off elsewhere.").

The Sheriff's 24/7 access, shower chair, and dayroom policies do not provide a disabled inmate with equivalent access to the Jail's toilets and showers, i.e., the same degree of independence that a structural accommodation would provide. ADA standards required the Jail to provide Flora with a toilet with grab bars and a mounted shower seat. *See* 1991 Standards § 4.21.3; 2010 Standards, § 604.5. One may fairly infer that the purpose is to provide an inmate with a disability, like one without a disability, access to a toilet and shower that he is able to use independently. *Cf. Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019-20 (9th Cir. 2015) (bench in clothing retailer's dressing room that did not comply with ADA standards' size requirements provided equivalent access because it nonetheless permitted wheelchair-bound person to complete a parallel transfer on his own). By contrast, the Sheriff's policies, as applied to Flora, required him to get assistance from a nurse or an officer in order to use the bathroom or shower and thus rendered him completely dependent on others to perform these necessary activities. No reasonable fact finder could determine this constituted

equivalent access. *See Pierce v. Cty. of Orange*, 526 F.3d 1190, 1219-20 (9th Cir.

2008) (district court erred in finding that a jail did not violate the ADA where wheelchair-

using plaintiffs presented evidence that they had to rely on fellow inmates to use the

jail's showers). With regard to the shower chair issue in particular, Flora testified during

his deposition that the stability of a mounted shower seat enables him to easily transfer

from his wheelchair to the mounted shower chair but that he could not do this with the

portable shower seat that the Jail provided because it had wheels. Specifically, Flora

wrote in a grievance that he was unable to use the portable shower chair effectively

because it was unstable and that he had injured himself in the shower as he tried to

move from his wheelchair to the portable shower chair.

### 3. Deliberate indifference

To recover compensatory damages under the ADA or RA, a plaintiff must show

that the Sheriff acted with deliberate indifference. As noted earlier, this is an official-

capacity suit against the Sheriff. But unlike in a case under 42 U.S.C. § 1983, the ADA

and the RA provide for vicarious liability (the Sheriff does not argue otherwise). *See,

e.g., Duvall*, 260 F.3d at 1141; *Morales v. City of New York*, No. 13-cv-7667, 2016 WL

4718189, at *7 (S.D.N.Y. Sept. 7, 2016); *Mapp v. Bd. of Trs. of Cmty. Coll. Dist. No.

508*, No. 15 C 3800, 2016 WL 4479560, at *4 (N.D. Ill. Aug. 25, 2016); *Phillips v. Tiona*,

No. 10-cv-00334, 2011 WL 2198532, at *11 (D. Colo. Mar. 11, 2011); *Guynup v.

Lancaster Cty.*, No. 06-4315, 2008 WL 4771852, at *1 (E.D. Pa. Oct. 29, 2008). Thus it

is sufficient if either Sheriff Dart or other Sheriff's personnel acted with deliberate

indifference.

Deliberate indifference is established "where an official realizes that a substantial

risk of serious harm to a prisoner exists, but disregards it." *Perez*, 792 F.3d at 781. In the context of ADA cases, a public official acts with deliberate indifference when he has "knowledge that a harm to a federally protected right is substantially likely" and he fails to "act upon that likelihood." *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1070 (N.D. Ill. 2016) (citing *Duvall*, 260 F.3d at 1139)); *see, e.g.*, *Perez*, 792 F.3d at 781 ("[W]e have stated that deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it.") (internal quotation marks omitted).

Flora argues that the record shows that the Sheriff (a term the Court uses to encompass both Dart and his subordinates) acted with deliberate indifference. Flora contends that the Sheriff was aware that his ADA and RA rights were being violated but, despite this, allowed the denial of access to an ADA-compliant toilet and shower to continue from May 2014 to September 2014. The Sheriff argues that a reasonable jury could find an absence of deliberate indifference due to the alternative arrangements that were made available to Flora. The Sheriff also argues that, even if the accommodations provided to Flora failed to give him equivalent access to the jail's facilities, a reasonable jury still could find that the Sheriff was not alerted to Flora's need for additional accommodations.

The Sheriff was on notice of Flora's need for accommodations at several different points in time during his detention. First, the Sheriff was on notice of Flora's need for an accessible toilet and shower when he was first booked into the jail. As another district judge aptly put it, "it could hardly have been more apparent that [an inmate], who spends his every waking moment confined to a wheelchair, was in need of ADA

15

compliant facilities." *Clemons*, 168 F. Supp. 3d at 1070. Second, the Sheriff was aware

that Flora's rights were being violated when, despite being confined to a wheelchair, he

was repeatedly assigned to rooms that quite obviously lacked grab bars by the toilet

and to showers that lacked mounted shower seats. Third, the Sheriff was also put on

notice that its 24/7 access policy was not, in fact, providing Flora with equivalent access

to the Jail's toilets and showers when Flora submitted several grievances on these

points. In his grievance describing his June 25, 2014 fall in the shower, Flora made a

request to get medical attention and a "proper shower chair." Grievances at 000086. In

another grievance, Flora wrote that he was transferred from one non-ADA compliant

room to another non-ADA compliant room. He said, "I asked to be moved to a room

that is accessible. I was told that there wasn't any room like that and that wasn't the first

time [that] I [have] heard that." *Id*. In that same grievance, Flora asked to be moved to

a "handicap accessible room to prevent further injury." *Id*.

There is also additional evidence of the Sheriff's knowledge of ADA accessibility

violations involving wheelchair-bound detainees at the Jail, including Flora. First, the

DOJ made the Sheriff aware that the RTU and Cermak building were not ADA-

compliant as of May 2012. Pl.'s SOMF, Ex. 28 (DOJ Letter). Second, the Sheriff was

aware of Flora's need for an ADA-compliant room before Flora was transferred to the

RTU. Specifically, Sheriff Dart himself monitored referrals from medical staff regarding

the housing assignments of inmates with disabilities. Pl.'s SOMF, Ex. 12 (Burke Dep.)

at 206:4-8. Before August 24, 2014, Sheriff Dart received an e-mail from Dr. Mennella

that alerted him to Flora's need for accommodations. *See* Mennella E-mail. In the body

of the e-mail, Dr. Mennella used a (P) designation to highlight eight patients—including

Flora—whom she believed should be given "priority for beds accommodating wheelchairs at the bedside." *Id*. Third, in 2014, the Sheriff was aware that wheelchair users on the third floor of Cermak were being assigned to rooms that did not have accessible toilets. *See* Burke Dep. at 208:22-17. Finally, the Sheriff's 24/7 access and dayroom policies are also evidence of its knowledge that inmates with disabilities were not being provided access to ADA-compliant rooms. Specifically, the 24/7 access policy allowed inmates to call a nurse for when they needed help going to the restroom, and the dayroom policy permitted wheelchair-using detainees in the RTU to leave their cells to use the ADA-compliant bathroom in the RTU's dayroom. The substance of both policies indicates that the Sheriff was aware that not all wheelchair-bound detainees had access to ADA-compliant toilets and showers.

Despite knowledge that Flora's rights were being violated, the Sheriff failed to address the violations. Flora was denied access to an ADA-compliant toilet and shower for approximately four months when he was assigned to rooms housed in Cermak and RTU during nearly the entire four months from May 2014 through September 2014. The Sheriff's offer of non-equivalent "accommodations" does not suggest anything other than deliberate indifference. The Court concludes that no reasonable jury could find that the Sheriff acted with anything other than deliberate indifference.

For these reasons, Flora is entitled to summary judgment on the question of liability on his claims relating to denial of access to an ADA-compliant toilet and shower in Cermak and the RTU.

## C. Claim concerning Leighton Courthouse

Flora also argues that he is entitled to summary judgment on his ADA and RA

claims concerning the Leighton Courthouse based on the doctrine of issue preclusion. Specifically, Flora contends that the court in *Lacy v. Dart*, No. 14 C 6259, 2015 WL 5921810 (N.D. Ill. Oct. 8, 2015), found that the Sheriff violated the ADA and RA with respect to the courthouse's inaccessible ramps and lack of ADA-compliant toilets available to detainees. The Sheriff argues that *Lacy*'s preclusive effect is only applicable to ADA violations that occurred prior to April 2014, which predates the time period covered by Flora's claims.

Under the doctrine of issue preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to that prior litigation." *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000) (internal quotation marks omitted). "The doctrine of issue preclusion prevents relitigation of issues when: (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom issue preclusion is invoked must have been fully represented in the prior action." *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014).

The third element of issue preclusion requires the Court to assess "whether the determination of the issue was essential to the finality" of the prior court's judgment, or to put it another way, whether the determination was "indispensable" to the prior ruling. *Local 25 S.E.I.U. Welfare Fund v. Great Lakes Maintenance & Sec. Corp.*, 55 F. App'x 373, 375 (7th Cir. 2002); *see also, e.g., Harris v. Huston*, 553 F. App'x 630, 631 (7th Cir. 2014) (question is whether the finding was "essential" to the prior decision). Although

the court in *Lacy* made findings regarding the time period at issue on Flora's claims regarding the Leighton Courthouse, none of those findings was essential to the rulings cited by Flora as preclusive.

On August 14, 2014, the plaintiff class in *Lacy* sued the Sheriff for violating their rights under the ADA and RA. The class argued that wheelchair-bound detainees did not have equal access to the Leighton Courthouse because the courthouse's holding cell lacked accessible bathrooms and the ramp to the detention area was too steep for a wheelchair-bound detainee to maneuver without the risk of harming himself. *Lacy v. Dart*, No. 14 C 6259, 2015 WL 1995576, at *4 (N.D. Ill. Apr. 30, 2015). In 2015, the plaintiff class moved for a preliminary injunction and a declaratory judgment that "detainees *are* being denied rights secured by the ADA and the Rehabilitation Act when they are transported to and from the Jail and court appearances." *Lacy v. Dart*, No. 14 C 6259, 2015 WL 5921810, at *10 (N.D. Ill. Oct. 8, 2015) (internal quotation marks omitted) (emphasis in original). The court denied the motion in October 2015, explaining that "[a]lthough the court has found past ADA violations, plaintiffs are not entitled to the declaratory judgment they request" because "the record establishes that defendants have undertaken extensive construction, beyond what is required of them by the ADA or the Rehab Act, that has remedied the majority of the violations about which plaintiffs complain." *Id.* at *12. Later, in November 2015, the district court granted the individual plaintiffs partial summary judgment on their claims, finding that the Sheriff had violated the ADA and the Rehabilitation Act. The court explained that because the Sheriff had "notice of the need to provide accommodations for wheelchair-using detainees attending [Leighton Courthouse] as early as 1999, [his] deliberate decision

not to provide such assistance prior to 2014 establishes intentional discrimination."
*Lacy v. Dart*, No. 14 C 6259, 2015 WL 7351752, at *4 (N.D. Ill. Nov. 19, 2015).

In its October 2015 decision, the court addressed the plaintiff class's request for a preliminary injunction against ongoing violations and a declaratory judgment that the class's rights were, *at that time*, being violated. The court did make a series of finding about post-April 2014 conduct involving the bathrooms and ramps at the Leighton Courthouse. *See Lacy*, 2015 WL 1995576, at *6-7, *11-12. But the court denied plaintiffs' request for a declaratory judgment, and it granted the request for preliminary injunction only in one very narrow respect, concerning a requirement for Sheriff's personnel to push wheelchair-bound detainees up and down ramps. The court's findings regarding post-April 2014 conditions were not essential to the ruling, because the decision was made on grounds completely independent of the preliminary factual determinations regarding post-April 2014 conditions. Likewise, the court did not rely on findings about post-April 2014 conditions at the courthouse in making its November 2015 decision. The November 2015 decision concerned the individual plaintiffs' motions for summary judgment on their ADA claims. The court may have adopted its earlier factual findings, including the findings about post-April 2014 conditions, but its ultimate ruling was that the Sheriff's "deliberate decision not to provide such assistance *prior to 2014* establishes intentional discrimination." *Lacy*, 2015 WL 7351752, at *4 (emphasis added). None of the court's findings about post-April 2014 conditions was essential to making its judgment about pre-2014 conditions or liability.

In sum, the findings in *Lacy* upon which Flora relies—that is, for periods following April 2014—were not essential to the court's decisions in that case. Because Flora's

claims in this case involving the courthouse arise from events that occurred after April 2014, the doctrine of issue preclusion does not entitle him to summary judgment.

The Sheriff argues for issue preclusion as well, but his argument is a fall-back, premised on the possibility that the Court would find that issue preclusion applies in a manner favorable to Flora. Because the Court has rejected Flora's argument, it rejects the Sheriff's as well. The Sheriff has not argued, and there is no basis to apply, issue preclusion against Flora based on the *Lacy* case, to which he was not a party .

### Conclusion

For the reasons stated above, the Court grants plaintiff's partial motion for summary judgment in part and denies it in part [dkt. no. 120]. Flora is entitled to summary judgment on the issue of liability on his claim concerning the Cook County Jail's inaccessible toilets and showers but not on his claim regarding conditions at the Leighton Courthouse. The case is set for a status hearing on May 24, 2017 at 9;30 a.m. for the purpose of setting a date for trial on all remaining claims and issues.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 17, 2017